## McKEE v. ALEXANDER, Collector of Internal Revenue.

District Court, W. D. Oklahoma.
Feb. 12, 1931.

Rainey, Flynn, Green & Anderson, of Oklahoma City, Okl., and C. B. McCrory, of Tulsa, Okl., for plaintiff.

Roy St. Lewis, U. S. Atty., of Oklahoma City, Okl., for defendant.

### VAUGHT, District Judge.

This is an action instituted by the plaintiff against the defendant as collector of internal revenue, and after alleging the jurisdictional facts, the petition states that in the year 1926, the Commissioner of Internal Revenue assessed, and on April 27, 1927, collected from the plaintiff as additional income tax to the government of the United States upon the plaintiff's income for the year 1920, the sum of $11,425.04, and as interest thereon the sum of $718.39, a total of $12,143.43; that the entire amount so assessed and collected from the plaintiff by the defendant was illegally assessed and illegally collected because of the fact that the amount of income used and erroneously relied upon by the defendant and the said commissioner, as the basis for the calculation of the amount of tax payable by the plaintiff, was incorrect, in that it erroneously included the amount of $35,750 which was not income of or to the plaintiff, and was not so received by the plaintiff.

The defendant filed an answer which is a general denial. A jury was waived by written stipulation, and the matter submitted to the court.

There is very little controversy over the facts in this case.

In determining the plaintiff's net taxable income for the year 1920, the commissioner included the sum of $35,750, which plaintiff contended and in this suit contends was the property of his wife, Freda B. McKee, and not income to him nor taxable to him, and to the inclusion of which he duly protested according to the rules and regulations of the Bureau of Internal Revenue, and he likewise duly protested the assessment of the additional tax occasioned by so including said item of $35,750, according to the rules and regulations of the Bureau of Internal Revenue, and it is stipulated that the proper claim for refund was duly filed and may be considered in evidence in this case; that said item of $35,750 in controversy consisted of one-half of the net income arising from sales of oil and gas leases covering the following described real estate, to wit: The east 70 acres of the south half of the southeast quarter of section 8, township 13 north, range 12 east of I. M., Okmulgee county, Okl.

The evidence discloses the following state of facts:

W. L. McKee has resided in Okmulgee, Okl., for twenty years. He married Freda B. Stirlen in Muscatine, Iowa, about eleven years before coming to Oklahoma. Both were engaged in the profession of teaching before marriage, and continued this occupation for some time after marriage, and both came to Okmulgee in 1905, where they engaged in the real estate business in Oklahoma for the Okmulgee Loan & Trust Company. Mrs. McKee was the active vice president of said company, and the plaintiff was the secretary

and treasurer. The other stockholders of the corporation were friends of the plaintiff and his wife living in Iowa. The corporation continued in business for some time and acquired several thousand acres of land. The stock in the corporation was held one-fourth jointly by the plaintiff and his wife and one-fourth each by three other persons. The lands above described were included among the assets of the corporation, title to which lands for convenience was held in the names of the various stockholders, and upon the dissolution of the corporation, the lands belonging to the corporation were divided as nearly equally in value as could be among the stockholders. After the dissolution of the corporation, and on the 22d day of August, 1911, the plaintiff and his wife divided their assets between themselves as nearly equally as they could. Some of the lands were deeded outright to Mrs. McKee, and others were retained by the plaintiff, and in some of the lands an undivided one-half interest was deeded to Mrs. McKee; that is, the lands which were held in the name of the plaintiff. The witness testified to the circumstances surrounding this division of the property. His statement was that his wife had always worked in business or teaching since their marriage, and after they came to Okmulgee she worked in the same office that he did. She was an officer of the corporation. She exercised an interest in his business affairs; in fact, all their transactions were joint transactions, and they had talked this matter over some time before the transfers actually took place, and agreed that they would divide their property equally as the wife had contributed as much to the accumulation of the property as the plaintiff had, and on the above date, August 22, 1911, the plaintiff executed a warranty deed to his wife for an undivided one-half interest in the lands above described known as the Salt Creek farm. There were four deeds executed in favor of Mrs. McKee, and those deeds were actually delivered to her. It seems that the deeds to certain property in Iowa were sent to Iowa and properly recorded; the deeds to the Oklahoma property were held by her among her private papers and were not recorded. One of the reasons given for not recording the deeds was that it was necessary for Mr. McKee to borrow from time to time rather large sums of money, and he felt that his credit would be better if the deeds were not recorded. His wife, however, signed the notes with him.

The evidence further shows that at the time the plaintiff and his wife were married that they had little money, and that they saved from their salaries as teachers and bought a home in Iowa; and that later they sold the home and invested the proceeds from their home in the Oklahoma property.

It furthermore appears that while the plaintiff and his wife owned one-fourth of the stock of the corporation jointly that, in fact, 454 shares were held in plaintiff's name, and only 44 shares in his wife's name. He explained, however, that he held that amount of stock in his own name for the reason that he was the active person in establishing the credit of the corporation, and he and his wife talked it over and believed it would be better to carry more of the stock in his name. The evidence shows that the plaintiff and his wife paid the taxes on the Salt Fork farm from 1911 to 1920; that the plaintiff did the business, but that one-half of the taxes on said farm were paid from his wife's property; that the farm remained in his name upon the public records. Some years after the plaintiff and his wife became the owners of the Salt Creek farm, or about 1920, the farm was leased for oil and gas. It appears that there were two companies that held these leases, one was the Western Export Company and the other a Denver company. The leases were signed by the plaintiff W. L. McKee and Freda B. McKee, and the plaintiff and wife received from them the sum of $80,000. The plaintiff further testified that all of the property that he and his wife owned was the result of their joint accumulations. Some time after the question arose which is involved in this case, the plaintiff alleges he and his wife made diligent search for the deeds to this land, but that they had moved in the meantime, and that this deed and other papers were lost and that they had never been able to find them. After they failed to find the deed, and in a comparatively recent period, the plaintiff executed a new deed to his wife for an undivided interest, but in the judgment of the court, the only question involved in this case is whether or not the plaintiff did in 1911 execute and deliver to his wife a good and sufficient warranty deed to an undivided one-half interest in the Salt Creek premises. From the evidence, the court is of the opinion that the deed was executed. The court observed the plaintiff on the witness stand. He had the appearance of an honest man. He was frank and open in his statements, and apparently made no effort to conceal any fact, and the court, therefore, is of the opinion from the evidence that this deed was executed in good faith. This entire transaction occurred pri-

or to the enactment of the present income tax law, but the court is impressed with the fact that there was as much consideration for the wife owning her portion of this land as there was for the husband. They had both worked in the same line of work since their marriage. There were no children, and in addition to being husband and wife they were business partners and were so treated and regarded by all who knew them, she working in the office with him and knowing the details of practically all of the business that was handled. There was no evidence introduced on this point except the evidence of the plaintiff. His statements are uncontradicted, and in the judgment of the court are reasonable and disclose a situation not dissimilar to transactions between husbands and wives who are associated together in business transactions. Their confidence in each other was unquestioned, and there was no occasion for any deception or fraud.

The government relies upon the case of Leydig v. Commissioner of Internal Revenue, from the Tenth Circuit, reported in 43 F.(2d) 494, 495, the opinion being written by Judge Cotteral, and in that opinion the learned judge says: "A contention of the petitioner is that the wife became a half owner of the land when it was acquired and for that reason owned one-half of the royalties. The Board ruled to the contrary as she furnished no consideration therefor and her title could not be enforced under the Statute of Frauds. The answer was that a third party may not question the title on either ground, or gainsay the trust capacity in which petitioner held the title. Concededly, he might have made an effective gift of a half interest in the land."

In that case, however, the facts are very different from those in the case at bar. Leydig was a farmer. His wife did the usual farm work. They had an oral understanding soon after their marriage that she should have one-half interest in all of the property. In 1916, Leydig and his wife made a lease on a farm which they owned and it was in his name, and then on August 1, 1919, Leydig executed an assignment of an undivided one-half interest "in and to any and all oil and gas royalty interests which may have been heretofore or shall be in the future received or retained by the said J. V. Leydig," and on the same date another instrument was executed by Leydig to his wife in which it is recited: "Now, therefore, in consideration of the above mentioned assignment and an oral agreement existing between the parties hereto, the said J. V. Leydig, party of the first part and Grace Leydig, party of the second part, do hereby and by these presents agree that all monies derived from the said oil and gas royalty interests are the joint property of each of the parties hereto, and that said parties shall have equal access to and own the same, share and share alike, and may at any time demand an accounting for the monies so received or retained."

There is much difference between an assignment of one-half of the profits to be derived from land as a result of an oral agreement, and a warranty deed conveying an undivided one-half interest in the land as in the case at bar.

While the court recognizes the distinction between the Leydig Case and the case at bar, and must recognize the law as established in the majority opinion in that case, yet he is not unmindful of the reasoning contained in the dissenting opinion by Judge Phillips in the same case.

The defendant contends that the contention of plaintiff is based on plaintiff's unsupported testimony which is too flimsy to be worthy of belief.

The court does not concede the proposition that the testimony is unworthy of belief merely because it supports the witness' contention. There was no evidence introduced to contradict the statement, and his appearance upon the witness stand, his demeanor, and general conduct impressed the court that he was a gentleman worthy of belief, and that his statements were true. There was no element of bad faith or designing motive involved, and no such contention was made. "Good faith," says Justice Brewer, "is presumed and need not be proved. Only bad faith requires evidence." So if there is any presumption to be indulged in regard to the testimony of the plaintiff it certainly would be in his favor, as there was no testimony to the contrary.

Since it is admitted that the determination of the issues in this case must stand or fall upon the one proposition of whether or not the plaintiff did in 1911 execute and deliver to his wife a good and sufficient warranty deed to an undivided one-half interest in the Salt Creek Farm, and since his evidence is the only evidence that was introduced on the question, and since further there is no apparent reason why his evidence should be disbelieved, the court is of the opinion that the case should be decided upon that question, and, therefore, will not resort to a discussion of the numerous authorities cited in the briefs. Judgment should therefore be ren-

dered in favor of the plaintiff as prayed in his petition.

The plaintiff and defendant have requested findings of fact and conclusions of law, which are attached hereto as a part of the opinion in this case.

### Findings of Fact.

(1) The court finds the facts to be as set forth in the stipulation signed by the parties and presented to and considered by this court in its determination and decision of the above-entitled cause.

(2) The court finds that prior to August 22, 1911, the plaintiff W. L. McKee and Freda B. McKee, his wife, by and with the proceeds and products which had accrued to and belonged to them, jointly acquired, became the owners of the 70 acres of land described in the stipulation, to wit, the east 70 acres of the south half of the southeast quarter of section 8, township 13 north, range 12 east of I. M., Okmulgee county, Okl.

(3) The court finds that on August 22, 1911, W. L. McKee executed, acknowledged, and delivered to Freda B. McKee a deed of conveyance covering and conveying to her an undivided one-half interest in and to the 70 acres of land described in the stipulation, and thereafter, including the year 1920, the plaintiff W. L. McKee remained the owner of only an undivided one-half interest in the legal and equitable title to said 70 acres of land, and to but one-half of the income from said 70 acres of land.

(4) The court finds that during the year 1920 the plaintiff W. L. McKee and Freda B. McKee, co-owners of the 70 acres of land described in the stipulations, leased the same for oil and gas purposes for considerations paid to them jointly, aggregating, to wit, $80,000, one-half of which, less brokerage and proper deductions for expenses, constitutes the item of income of $35,750 mentioned in the stipulations, which item of income the court finds was not income to the plaintiff and was not so received by the plaintiff.

(5) The court having found that the item of $35,750 was not income to the plaintiff nor taxable to him, the court further finds, as per the terms of paragraph 7 of the stipulations, that the correct amount of the net taxable income of plaintiff for the year 1920 was the sum of $33,583.32 and that the correct amount of plaintiff's tax computed thereon was $4,695.63, which amount was originally paid by the plaintiff.

### Conclusions of Law.

1. The court concludes as a matter of law that during the year 1920, the plaintiff was the owner of only an undivided one-half interest in the 70 acres of land described in the stipulation which was leased by himself and wife for oil and gas purposes, and that the plaintiff did not own nor receive, as his income therefrom, the sum of $35,750 mentioned in paragraphs 7 and 8 of the stipulation.

2. The court concludes that income from land acquired by a consideration supplied jointly by husband and wife is income to the husband only to the extent of his rateable interest in the investment.

3. The court concludes that income from land owned in common by husband and wife, each owning an undivided one-half interest, is income to the husband only to the extent of his one-half interest.

4. The court concludes that by virtue of the joint financial and business transactions and relations which existed and were conducted by and between the plaintiff and his wife, that for a period next preceding August 22, 1911, the husband held the entire legal title to the 70 acres of land described in the stipulation, but was the owner of only an undivided one-half interest in such land, one-half of the equitable title therein being vested in his wife, and that after executing and delivering to his wife the deed of August 22, 1911, the plaintiff thereafter, and during 1920, remained the owner only of an undivided one-half interest in the legal and equitable title to said land, and was the owner and entitled to receive the income therefrom only to the extent of his rateable interest.

5. The court concludes that irrespective of the status as between the plaintiff and his wife of the title and ownership of the 70 acres of land described in the stipulation prior to August 22, 1911, that the husband by executing and delivering the deed of that date to his wife conveyed to her an undivided one-half interest in and to said land, and that thereafter, and during the year 1920, the plaintiff remained the owner of only the remaining undivided one-half interest in said land, and had owned and received during the year 1920 only one-half of the income from said land and did not own and did not receive as his income the item of $35,750, mentioned in paragraphs 6, 7, and 8 of the stipulation, and that said item was not income to him.

6. The court finds generally for the plaintiff.

7. The court concludes that the plaintiff W. L. McKee is entitled to judgment against the defendant in the sum of $12,143.43 with 6 per cent. interest thereon from April 20, 1927, as prayed for in his petition.